# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-81150-CIV-ROSENBAUM

SYLVIA BERMAN,

      Appellant,

v.

MARGARET J. SMITH,

      Appellee.

_____/

In re:

ILENE ISADORA GOLDSCHMIDT,

      Debtor.

_____/

## <u>OPINION AND ORDER</u>

      This matter is before the Court upon the Brief of Appellant Sylvia Berman [ECF No. 12]. The Court has considered the brief, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court vacates and remands the Bankruptcy Court's Order Approving Stipulation to Compromise Controversy Between Trustee and APW Holdings, LLC; and Granting Bar Order for a determination about whether settlement credit should be awarded to nonsettling creditors whose claims are enjoined by the Bar Order.

### *BACKGROUND*

      Ilene Isadora Goldschmidt and her mother are co-owners and co-managers of APW Holdings, LLC ("APW"), a Florida company that owns and operates retail stores in airports across the United States. ECF No. 12 at 3. Goldschmidt was previously married to Lance Berman until their divorce

in 2012. *Id.*

On October 25, 2007, Lance Berman's mother, Appellant Sylvia Berman, deposited $245,000.00 into her son and daughter-in-law's joint account, and the couple signed a promissory note in exchange for this sum. *Id.* at 3-4. Sylvia Berman raised the money by taking out a mortgage on her residence. *Id.* The couple represented to Sylvia Berman that the money was needed for APW's business purposes, but the promissory note was neither signed nor guaranteed by APW. *Id.* This differed from at least two previous instances in which Sylvia Berman had made loans directly to APW, and those loans were evidenced by written promissory notes from APW and written guarantees from Goldschmidt's mother. ECF No. 17 at 7. Nevertheless, within days of Sylvia Berman's deposit of the funds into the couple's joint account, $245,000.00 was transferred from the joint account to an APW account. ECF No. 12 at 4. Goldschmidt and Lance Berman then made monthly mortgage payments to Sylvia Berman's mortgagee from their joint account, using funds provided by APW. *Id.*

But the couple ceased making these mortgage payments during the pendency of their divorce proceedings. *Id.* Sylvia Berman thereafter filed a one-count Complaint in Florida state court for breach of the promissory note, and final judgment was entered in her favor in the amount of $265,000.00 on February 11, 2011. *Id.* After collection of this judgment presumably proved unsuccessful, on January 20, 2012, Sylvia Berman filed supplementary proceedings against APW and others to collect on the judgment pursuant to § 56.29, Fla. Stat.[1] *Id.* at 4-5. Sylvia Berman's

---

[1] Section 56.29, Fla. Stat., allows a judgment creditor to open proceedings that are "supplementary to execution," such as avoiding any transfer of personal property that is made by a judgment debtor to "delay, hinder or defraud creditors." Fla Stat. § 56.29(1), (6)(a); *see also Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1135-36 (11th Cir. 2013).

Complaint brought counts against APW for unjust enrichment, fraudulent transfer, and money lent, among others. *Id.*

Goldschmidt filed a voluntary petition for Chapter 7 bankruptcy on February 24, 2012. *In re Ilene Isadora Goldschmidt*, No. 12-14430, ECF No. 1 (Bankr. S.D. Fla. Feb. 24, 2012). Sylvia Berman moved the Bankruptcy Court to determine the extent of the automatic stay and whether it would affect her state-court proceeding against APW. *Goldschmidt*, No. 12-14430, ECF No. 20 (Bankr. S.D. Fla. Mar. 30, 2012). The Bankruptcy Court determined that the counts against APW for unjust enrichment and money lent were not subject to the automatic stay because they were "independent, direct claims asserted against a nondebtor, APW . . . . [and] do not seek relief against Debtor or Debtor's estate." *Goldschmidt*, No. 12-14430, ECF No. 48 (Bankr. S.D. Fla. May 12, 2012). But the Bankruptcy Court noted that the Order was "without prejudice, and the Trustee shall be permitted to seek a later determination that such claims seek recovery against assets of the estate." *Id.*

Subsequent to the Bankruptcy Court's determination about the extent of the automatic stay, the state court dismissed Sylvia Berman's supplementary proceeding. ECF No. 12 at 6. Sylvia Berman thereafter filed a new, independent action against APW, asserting claims of unjust enrichment, money lent, and promissory estoppel. *See Goldschmidt*, No. 12-14430, ECF No. 118 at 16-20 (Bankr. S.D. Fla. Dec. 19, 2012).

After the filing of this new action against APW, Appellee Margaret J. Smith, the Trustee in bankruptcy for Goldschmidt, engaged in settlement discussions with APW relating to the Trustee's potential claims against APW. ECF No. 17 at 5. On January 17, 2013, the Trustee moved the Bankruptcy Court to approve a Settlement Agreement between the Trustee and APW that provided

for APW's payment of $175,000.00 to the Trustee, subject to entry of a bar order that would permanently enjoin Sylvia Berman from asserting any claims against APW or the Debtor related to the $245,000.00 loan, the Final Judgment against Debtor in favor of Sylvia Berman, or Sylvia Berman's Complaint against APW. *Goldschmidt*, No. 12-14430, ECF No. 121 at 19-20 (Bankr. S.D. Fla. Jan. 17, 2013). The Trustee testified that she was settling three distinct claims against APW: the value of Goldschmidt's equity interest in APW, Goldschmidt's transfer of her Internal Revenue Service ("IRS") tax refund to APW in 2009, and Goldschmidt and Lance Berman's transfer of the $245,000.00 loan to APW in 2007. ECF No. 4 at 27:18-28:4.

After an evidentiary hearing, on August 29, 2013, the Bankruptcy Court entered its Order Approving Stipulation to Compromise Controversy Between Trustee and APW Holdings, LLC; and Granting Bar Order. *Goldschmidt*, No. 12-14430, ECF No. 204 (Bankr. S.D. Fla. Aug. 29, 2013). Sylvia Berman now appeals the Bankruptcy Court's approval of the Settlement Agreement and entry of the Bar Order to this Court. ECF No. 1.

### *JURISDICTION*

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b). *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." *Id.* at *1-*2; 28 U.S.C. § 158(a)(1).

-4-

"[A] final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *In re Culton*, 111 F.3d 92, 93 (11th Cir. 1997) (citing *In re Tidewater Group, Inc*., 734 F.2d 794, 795-96 (11th Cir. 1984)). While a bankruptcy-court order that denies approval of a settlement agreement does not resolve the litigation and is not a final order, *see In re Tidewater Group, Inc*., 734 F.2d 794, 796 (11th Cir. 1984), an order that affirms a settlement agreement does resolve the litigation and leaves nothing more for the bankruptcy court to do. *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007) (quoting *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985)). Orders approving settlement agreements are therefore final and reviewable.

## STANDARD OF REVIEW

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule 8013, Fed. R. Bankr. P., a district court reviews the factual findings of a bankruptcy court for clear error. As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a *de novo* review. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assocs.*, 951 F.2d 1223, 1228-29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*").

In addition, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air, Inc*., 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (collecting cases).

*DISCUSSION*

Sylvia Berman challenges on this appeal both the Trustee's standing to settle the claim for the transfer of $245,000.00 to APW and the Bankruptcy Court's entry of the Bar Order enjoining the continued prosecution of her claims against APW in state court.

**A. The Trustee's Settlement of the Claim Against APW**

Sylvia Berman first argues that the Trustee lacked standing to settle the fraudulent-transfer claim for the transfer of the $245,000.00 loan monies to APW, which, according to Sylvia Berman, are not property of the bankruptcy estate. *See* ECF No. 12 at 8-14.

Section 548 of the Bankruptcy Code provides,

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any [creditor] . . . .

11 U.S.C. § 548(a). Notwithstanding § 548's limitation on avoidable claims to those incurred up to two years before the date of the bankruptcy filing, § 544(b) provides, with respect to those claims that are allowable unsecured claims,

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowable] unsecured claim . . .

11 U.S.C. §544(b). Thus, under § 544, "a trustee in bankruptcy may 'step into the shoes' of an unsecured creditor and void a transfer of an interest in the debtor's property that the unsecured creditor would have the power to void under federal or state law." *In re Int'l Pharmacy & Disc. II, Inc.*, 158 F. App'x 256, 259 (11th Cir. 2005) (citing *In re Graham*, 747 F.2d 1383, 1386-87 (11th

Cir.1984)). "The purpose of § 544 is to arm the trustee with sufficient powers to gather in the property of the estate." *In re Halabi*, 184 F.3d 1335, 1337 (11th Cir. 1999). "A trustee acting under section 544 acts as a representative of creditors, and any property recovered is returned to the estate for the eventual benefit of all creditors." *In re Van Diepen, P.A.*, 236 F. App'x 498, 502 (11th Cir. 2007) (quoting *In re Zwirn*, 362 B.R. 536, 540-41 (S.D. Fla. 2007)).

Both parties agree that the claim at issue—the allegedly fraudulent transfer of $245,000.00 from Goldschmidt and Lance Berman's joint account to APW in 2007—is an allowable unsecured claim and, thus, governed by § 544(b). Sylvia Berman argues that the Trustee lacks standing to assert such a claim because, according to Berman, under Florida law, the claim extinguished four years after it arose, or in 2011.

The Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101 *et seq.* ("FUFTA"), provides,

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105. Under the FUFTA, a creditor may bring an action to obtain "[a]voidance of the [fraudulent] transfer or obligation to the extent necessary to satisfy the creditor's claim." Fla. Stat. § 726.108(1)(a). But any cause of action with respect to a fraudulent transfer or obligation is "extinguished unless action is brought . . . within 4 years after the transfer was made or the obligation was incurred." Fla. Stat. § 762.110. Notwithstanding the four-year limitation period, a cause of action under § 726.105(1)(a) may still be brought "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Fla. Stat. § 726.110(1). According to Sylvia Berman, any claim for fraudulent transfer with respect to the transfer of the $245,000.00 loan to APW is extinguished because that transfer occurred in October 2007, more than four years prior to the filing of the bankruptcy petition.

The Trustee, meanwhile, argues that, because the IRS is a creditor, 26 U.S.C. § 6502, and not Florida law, is the relevant "applicable law" under § 544(b). That statute provides that a "tax may be collected by levy or by a proceeding in court [by the IRS], but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). The Trustee asserts that, because claims of the United States are generally not subject to state statutes that place time limits on enforcement of those claims, the Trustee can step into the shoes of the IRS and apply the ten-year statute of limitations to the claim. *See United States v. Summerlin*, 310 U.S. 414, 416 (1940) (collecting cases) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."). Sylvia Berman disputes the Trustee's ability to apply this ten-year statute of limitations on a number of grounds. *See* ECF No. 20 at 1-4.

But the Court need not reach the issue of the limitations period applicable to the IRS under

the Tax Code in order to find the instant fraudulent transfer voidable under § 544(b). Section 544(b) allows the Trustee to avoid transfers that are "voidable under applicable law by a creditor holding an unsecured claim." As with Sylvia Berman's own claim for fraudulent transfer against APW, any claim by the IRS for fraudulent transfer with respect to the transfer of the $245,000.00 loan to APW could be brought under § 726.105, Fla. Stat., since transfers under that section are fraudulent "as to [both] present and future creditors."[2] Fla. Stat. § 726.105. Though Sylvia Berman cites *In re Global Technovations Inc.*, 694 F.3d 705 (6th Cir. 2012), for the notion that the IRS could only have a fraudulent-transfer claim if it became a creditor "before the transfer was made and the obligation was incurred," that case discussed § 726.106, Fla. Stat., which applies to "present creditors" only. *Id.* at 712. Section 726.105, meanwhile, explicitly applies to both present and future creditors, so the IRS is not barred from asserting a fraudulent-transfer claim under § 762.105 merely because it became a creditor after the transfer at issue.

Though causes of action for transfers under § 726.105(1)(b) are extinguished four years after the occurrence of the transfer, causes of action under § 726.105(1)(a) brought four years after the transfer may still be valid if brought within a year that the "transfer could reasonably have been discovered by the claimant."[3] Fla. Stat. § 726.110. The IRS can only reasonably have discovered the

---

[2] The IRS's first claim against Goldschmidt arose on November 17, 2008. *See* Claims 3-1; 3-2.

[3] The count for fraudulent transfer in Sylvia Berman's original supplementary proceeding alleges claims under both §§ 726.105(1)(a) and (b), though without expressly citing the provisions under which the claims are brought. *See Goldschmidt*, No. 12-14430, ECF No. 118 at 4-5, ¶¶ 17, 22 (Bankr. S.D. Fla. Dec. 19, 2012) ("The transfer of such funds to APW, an insider, was without any consideration or reasonably equivalent value . . . . the aforesaid asset transfers were performed with the intent to hinder or defraud the Plaintiff, an existing creditor.").

transfer of the $245,000.00 loan to APW after it made an appearance in the underlying bankruptcy proceeding. The IRS first filed its claims in the bankruptcy proceeding on June 29, 2012, and the Settlement Agreement that purports to resolve the fraudulent transfer of the $245,000.00 to APW was first presented to the Bankruptcy Court on January 17, 2013—less than six months after the filing of the IRS's claim. *Goldschmidt*, No. 12-14430, ECF No. 121 at 19-20 (Bankr. S.D. Fla. Jan. 17, 2013). Thus, any potential claims asserted by the IRS, and resolved by the Settlement Agreement, were brought within one year of the point in time in which the IRS could reasonably have discovered the transfer. Thus, the IRS's claim for fraudulent transfer was not extinguished under Florida law at the time of the Settlement Agreement. Because the IRS's claim is allowable under Florida law, the Court does not address whether 26 U.S.C. § 6502 may also form an independent basis for the claim.

Sylvia Berman next argues that the Trustee can assert no fraudulent-transfer claim against APW with respect to the transfer of the $245,000.00 because Goldschmidt's joint account was the mere conduit of a loan that Sylvia Berman intended to give directly to APW. ECF No. 12 at 12-14. In support, Sylvia Berman points to *In re Chase & Sanborn Corp.*, 813 F.2d 1177 (11th Cir. 1987), that held that "where a transfer to a noncreditor is challenged as fraudulent, more is necessary to establish the debtor's control over the funds than the simple fact that a third party placed the funds in an account of the debtor with no express restrictions on their use. In determining whether the debtor had control of funds transferred to a noncreditor, the court must look beyond the particular transfers in question to the entire circumstance of the transactions." *Id.* at 1181-82.

The standard elucidated in *Chase & Sanborn* and subsequently developed in other Eleventh Circuit precedent has come to be known as the "control" or "mere conduit" test. *See In re Harwell*,

628 F.3d 1312, 1322 (11th Cir. 2010). Ordinarily, when a transfer is avoided under § 544 or § 548, the trustee can recover the property transferred only from the "initial transferee of the transfer" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). But the Eleventh Circuit has "carved out an equitable exception to the literal statutory language of 'initial transferee' . . . for initial recipients who are 'mere conduits' with no control over the fraudulently-transferred funds." *Harwell*, 628 F.3d at 1322 (citing *Chase & Sanborn Corp.*, 813 F.2d at 1178-80).

"[T]ransferees who want to come within the equitable exception to §§ 548 and 550 of the Bankruptcy Code 'must establish (1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor[,] and (2) that they acted in good faith and as an innocent participant in the fraudulent transfer.'" *Perlman v. Bank of Am., N.A.*, No. 12-13436, 2014 WL 1259462, at *2 (11th Cir. Mar. 28, 2014) (quoting *Harwell*, 628 F.3d at 1323). "This two-pronged test entails 'a flexible, pragmatic, equitable approach of looking beyond the particular transfer in question to the circumstances of the transaction in its entirety.'" *Perlman*, 2014 WL 1259462, at *2 (quoting *Harwell*, 628 F.3d at 1322).

Significantly, the "mere conduit" theory is an affirmative defense that "is available to persons or entities who are initial recipients of fraudulent transfers. . . . [and] must be affirmatively proved by the one seeking to obtain its protection." *Perlman*, 2014 WL 1259462, at *2. Here, the initial transferee of the allegedly fraudulent transfer is APW, and Sylvia Berman cannot assert an affirmative defense that is available only to APW—the opposing party in the state-court action that Sylvia Berman hopes to pursue. Furthermore, because the mere-conduit defense is available only to the initial transferee,  the only way that Goldschmidt and Lance Berman's joint account could be considered a "mere conduit," as Sylvia Berman argues, would be if the initial transfer of $245,000.00

-11-

from Sylvia Berman to her son and daughter-in-law were itself the allegedly fraudulent transfer. Presumably, Sylvia Berman does not intend to argue that the loan she seeks to recover was itself fraudulent.

Moreover, the *Perlman* Court noted that, while neither the Eleventh Circuit nor Florida state courts have determined whether the "mere conduit" defense is available under the FUFTA, other circuit courts of appeal that have considered the issue have concluded that "the transferee's knowing participation [in the transferor's fraudulent scheme] is irrelevant under the [Act]." *Perlman*, 2014 WL 1259462, at *2 & n.2 (citing *Boyer v. Crown Stock Dist., Inc.*, 587 F.3d 787, 792 (7th Cir. 2009); *Frank Sawyer Trust of May 1992 v. Comm'r of Internal Revenue*, 712 F.3d 597, 606-07 (1st Cir. 2007); *Warfield v. Byron*, 436 F.3d 551, 557-59 (5th Cir. 2006)). Accordingly, Sylvia Berman's argument that the mere-conduit test prevents the Trustee from asserting a claim over the transfer to APW is unavailing.[4]

## B. The Bar Order

Sylvia Berman next argues that the Bar Order that enjoined her from pursuing her state-court action against APW should be vacated. ECF No. 12 at 15-22. The Bankruptcy Code and the Federal Rules of Civil Procedure provide "ample authority" for a bankruptcy court to enter settlement bar orders. *Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996). As the Eleventh Circuit has explained,

> Several justifications for entering bar orders in bankruptcy cases exist. First, public policy strongly favors pretrial settlement in all types of litigation because such cases, depending on their complexity,

---

[4] Because the Court denies the mere-conduit argument on other grounds, the Court does not address the Trustee's assertion that Sylvia Berman is judicially estopped from making any mere-conduit argument. *See* ECF No. 17 at 20-22.

"can occupy a court's docket for years on end, depleting the resources of parties and the taxpayers while rendering meaningful relief increasingly elusive." *U.S. Oil & Gas v. Wolfson*, 967 F.2d 489, 493 (11th Cir. 1992). Second, litigation costs are particularly burdensome on a bankrupt estate given the financial instability of the estate. Third, "bar orders play an integral role in facilitating settlement." *U.S. Oil & Gas*, 967 F.2d at 494. This is because "[d]efendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *U.S. Oil & Gas Litigation*, 967 F.2d at 494.

*Id.*

Sylvia Berman argues that her common-law claims against APW are "truly independent claims" from those resolved by the Settlement Agreement and, thus, should not be subject to the Bar Order. ECF No. 12 at 15-17. The Eleventh Circuit has expressly declined to address the issue of a bar order's reach over "truly independent claims." *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir. 2004) (citing *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 496 n.5 (11th Cir. 1992)). With respect to class-action lawsuits, at least, the Eleventh Circuit has nevertheless "question[ed] whether truly independent claims that a settlement bar order cannot extinguish will ever remain in a class action lawsuit." *U.S. Oil & Gas Litig.*, 967 F.2d at 496 n.5.

But "[i]f the cross-claims that the district court seeks to extinguish through the entry of a bar order arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement." *Id* at 496. Here, the common-law claims for unjust enrichment, money lent, and promissory estoppel asserted by Sylvia Berman in her state-court Complaint are all based on the same facts and arise from the same transaction as the statutory fraudulent-transfer claim that formed the basis of the Trustee's avoidance powers. *See Goldschmidt*, No. 12-14430, ECF No. 118 at 18-20, ¶¶ 12, 15, 23 (Bankr. S.D. Fla. Dec.

19, 2012) ("The circumstances are such that it would be inequitable for APW HOLDINGS, LLC to

retain the benefit of having received $245,000.00 from SYLVIA R. BERMAN without paying the

value thereof to Plaintiff. . . . Defendant, APW owes Plaintiff the unpaid principal balance of

$231,378.86 plus interest from October 1, 2010 for money lent by the Plaintiff to the Defendant on

October 30, 2007. . . . Plaintiff relied to her detriment on the promises of repayment [of the loan] by

Ilene in her representative capacity as member and manager of APW."). Accordingly, Sylvia

Berman's common-law claims are not truly independent, and the Bar Order should not be vacated

because it enjoins these claims.

Sylvia Berman next argues that the Bar Order is neither fair nor equitable under applicable

Eleventh Circuit precedent. ECF No. 12 at 17-20. The factors that a bankruptcy court must consider

when deciding whether to approve a settlement agreement include the following:

> (a) The probability of success in the litigation; (b) the difficulties, if
> any, to be encountered in the matter of collection; (c) the complexity
> of the litigation involved, and the expense, inconvenience and delay
> necessarily attending it; (d) the paramount interest of the creditors and
> a proper deference to their reasonable views in the premises.

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990) (quoting *Martin v. Kane (In re A*

*& C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

When deciding whether to enter a bar order, a bankruptcy court must "make a reasoned

determination that the bar order is fair and equitable" and, in making such a determination, consider

"the interrelatedness of the claims that the bar order precludes, the likelihood of nonsettling

defendants to prevail on the barred claim, the complexity of the litigation, and the likelihood of

depletion of the resources of the settling defendants." *Munford*, 97 F.3d at 455 (citing *U.S. Oil & Gas*

*Litig.*, 967 F.2d at 493-96).

-14-

During the evidentiary hearing on whether to approve the Settlement Agreement and Bar Order, the Bankruptcy Court conducted a two-step approach to approve the Settlement Agreement. The Bankruptcy Court first determined that the Settlement Agreement, absent the Bar Order, fell within the range of reasonableness under the *Justice Oaks* factors. ECF No. 4 at 160:21-164:25. Sylvia Berman agreed that the Settlement Agreement without the Bar Order falls within the range of reasonableness. *Id.* at 157:19-158:8. The Bankruptcy Court then determined that the Bar Order is fair and equitable under the factors elucidated in *Munford*. *Id.* at 165:1-167:11.

Sylvia Berman argues that the Bankruptcy Court's reasoning under these *Justice Oaks* and *Munford* factors was flawed. For example, Berman argues that, when analyzing the "interrelatedness of the claims that the bar order precludes," the Bankruptcy Court considered the interrelatedness of Berman's state-law claims with "her original claim on the promissory note executed by the Debtor" when, instead, the Bankruptcy Court should have considered the interrelatedness of her claim with the Trustee's claim to avoid the fraudulent transfer to APW. ECF No. 12 at 21. But this Court has already found Berman's state-law claims to be based on the same facts and transaction as the Trustee's fraudulent-transfer claim. *See supra*. Thus, any alleged failure of the Bankruptcy Court to expressly consider the interrelatedness of Berman's state-law claims with the Trustee's fraudulent-transfer claim does not warrant vacatur because those two claims are, in fact, interrelated.

Sylvia Berman also suggests that the Bankruptcy Court overstepped its limited jurisdiction by concluding that Berman's state-court claims had little or no likelihood of success. ECF No. 12 at 21. But *Munford* requires the Bankruptcy Court to consider "the likelihood of nonsettling defendants to prevail on the barred claim." *Munford*, 97 F.3d at 455. The Bankruptcy Court therefore did not err by determining Berman's likelihood of success on her state-court claims as required under

-15-

*Munford*.

Berman also contends that the Bankruptcy Court failed to explicitly declare that the Bar Order was "fair and equitable." ECF No. 20 at 18. But the *Munford* factors are factors courts use to "make a reasoned determination that [a] bar order is fair and equitable," and the Bankruptcy Court expressly considered these factors. *Munford*, 97 F.3d at 455. The terms "fair and equitable" are not magic words, and the Bankruptcy Court's reasoning that the Bar Order was fair and equitable under *Munford* does not fail simply because the Bankruptcy Court never expressly used the words "fair and equitable" in the context of the Bar Order.

Finally, Berman argues that the Bankruptcy Court failed to take into account the "paramount interests of the creditors" and give "proper deference to their reasonable view in the premises" when it approved the Settlement Agreement. Specifically, Berman argues that the Settlement Agreement is inequitable because the $175,000.00 that APW must pay the Trustee under the Settlement Agreement will be used to partially repay the IRS's priority unsecured claims that total $316,287.29, so none of the settlement money will reach Sylvia Berman or any other creditor. Thus, the nonsettling creditors enjoined by the Bar Order are to receive no compensation from the Settlement Agreement.

Berman points to *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004), in which the Eleventh Circuit vacated and remanded a bar order because, among other reasons, "the district court made no findings of fact, and expressed no rationale or authority for barring claims without a settlement credit or 'set off.'" *Id.* at 1312. As Berman notes, the Eleventh Circuit has, on other occasions, approved bar orders that provide judgment credit to the nonsettling parties subject to the bar order. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 861-62 (11th

Cir. 2009); *Munford*, 97 F.3d at 455-56; *see also In re RDM Sports Group, Inc.*, 277 B.R. 415, 420 (Bankr. N.D. Ga. 2002) (parties agreed that a judgment credit to nonsettling defendants was required for entry of bar order)

A judgment credit serves as "very significant compensation" to a nonsettling defendant and "provides adequate compensation . . . for the extinguishment of . . . potential claim[s]." *HealthSouth Corp. Sec. Litig.*, 572 F.3d at 861-62. "By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims, as well as for any other claims where the harm to the non-settling defendants is based on their liability to the plaintiffs." *Gerber v. MTC Elec. Technologies Co., Ltd.*, 329 F.3d 297, 306 (2d Cir. 2003) (citing *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1032 (2d Cir. 1992)).

When approving the Settlement Agreement, the Bankruptcy Court here noted that collection from Goldschmidt would be "very difficult," implying that even without the Settlement Agreement it would be unlikely that the Bankruptcy Estate would be able to repay any non-IRS creditors. ECF No. 4 at 163:22-:25. But in neither the evidentiary hearing nor the August 29, 2013, Order did the Bankruptcy Court discuss the issue of whether a settlement credit to the nonsettling creditors would be appropriate in light of the Bar Order. Accordingly, the August 29, 2013, Order must be vacated and remanded to the Bankruptcy Court for a determination about whether any settlement credit in favor of nonsettling creditors whose claims are barred by the Bar Order is appropriate.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order Approving Stipulation to

Compromise Controversy Between Trustee and APW Holdings, LLC; and Granting Bar Order is **VACATED and REMANDED** for a determination about whether settlement credit should be awarded to nonsettling creditors whose claims are enjoined by the Bar Order. The Clerk of Court shall **CLOSE** this case. All pending motions are **DENIED as MOOT.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 30th day of April 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

-18-